UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X   rf5531
IN RE:

    FANI DOURAKIS                  Case No.: 10-44826

                             CHAPTER 13
            Debtor.        Hon. Jerome Feller

------------------------------X   Adv. Pro. No.:
FANI DOURAKIS
            Plaintiff,

    -against-

AMTRUST BANK, A DIVISION OF NEW
YORK COMMUNITY BANK

            Defendant.        **COMPLAINT**
------------------------------------X

    Plaintiff, FANI DOURAKIS, the debtor herein, by her

attorney, RICHARD S. FEINSILVER, as and for her complaint

against defendant, AmTrust Bank, a division of New York

Community Bank (hereinafter "AmTrust"), respectfully alleges as

follows:

## JURISDICTION

1.  Plaintiff, FANI DOURAKIS, filed a petition for relief under

Chapter 13 of the United States Bankruptcy Code, on May 26,

2010.  This Court has jurisdiction over this adversary

proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is

proper in this district pursuant to 28 U.S.C. §1409.  The

statutory predicate for this proceeding is 11 U.S.C. §506(a) and

§506(d) of the United States Bankruptcy Code and 3012, 6009 and 7001 et, seq., of the Federal Rule Bankruptcy Procedure.   This action is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A)&(K).

## PARTIES

2.   Plaintiff, FANI DOURAKIS, is an individual who resides at 145-50 19th Avenue, Whitestone, New York.   Plaintiff is the owner in fee of this property and holds title to this property.

3.   Upon information and belief, Defendant AmTrust is a secured creditor in the underlying Chapter 13 case, and upon information and belief, has based its secured status upon being the holder/servicing agent of a mortgage made by the debtor, duly filed with the Register of the County of Queens, State of New York.   Upon information and belief, AmTrust has appeared in the underlying Chapter 13 case, and has filed a proof of claim (Exhibit A).

4.   There is presently a first mortgage lien of record against the debtor's homestead, also held by AmTrust, with an outstanding balance of approximately $613,917.49 as of the filing date. (Exhibit B)

## BACKGROUND AS TO ALL CLAIMS FOR RELIEF

5.  Plaintiff, FANI DOURAKIS, is an individual who resides at 145-50 19th Avenue, Whitestone, New York.  The Plaintiff is the owner of this property in fee simple.  As of March 27, 2010, the real property was appraised at a value of $570,000.00  A copy of said appraisal is annexed hereto as Exhibit C.

6.  Upon information and belief, on or about January 11, 2008, the debtor executed a mortgage and mortgage note in the amount of $78,000.00 in favor of the Defendant, or its predecessor in interest.

## AS AND FOR FIRST CLAIM FOR RELIEF

7.  Plaintiff repeats and realleges each and every allegation as set forth in paragraphs "1" through "6" as fully set forth herein below.

8.  The total amount due on the first mortgage lien against the real property is at least $613,000.00, while the appraised value of the property is $570,000.00.  As such, there is no equity in the property to secure the alleged second mortgage lien filed by AmTrust, and therefore said claim is fully unsecured.

9.  Pursuant to §506(a) of the Bankruptcy Code, a claim is allowed as secured only to the extent of the value of property

upon which the lien is fixed.    The remainder of the claim is
considered unsecured.

10.    Accordingly, pursuant to §506(a) of the Bankruptcy
Code and Rule 3012 of the Federal Rules of Bankruptcy Procedure,
the secured claim of AmTrust is wholly unsecured because the
prior secured lien exceed the appraised value of the property.
Accordingly, the full amount of the second mortgage held by
AmTrust cannot be allowed as secured and must be deemed fully
unsecured.

## AS AND FOR SECOND CLAIM FOR RELIEF

11.    Plaintiffs repeat and reallege each and every
allegation as set forth in paragraphs "1" through "10" as if
fully set forth herein below.

12.    Pursuant to §506(d) of the Bankruptcy Code, to the
extent a lien secures a claim against the debtor that is not an
allowed secured claim, such lien is void unless such claim is
disallowed under §506(b)(5) or §502(e) of the Bankruptcy Code;
or such claim is not an allowed secured claim due only to the
failure of the entity to file a Proof of Claim under section
501.

13.    The secured status of any claim filed by AmTrust
associated with its second mortgage should be disallowed in its
entirety.    Therefore, the second mortgage lien held by AmTrust
must, pursuant to §506(d), be considered null and void.

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment, in favor of the Plaintiff and against the Defendant declaring that:

1.   The second mortgage claim held by Defendant, secured by a second mortgage lien on the debtor's property located at 145-50 19th Avenue, Whitestone, New York be deemed a wholly unsecured claim, and that the entire lien be declared null and void; and

2.   The Court grant such other, further and different relief as it deems just, proper and equitable.


Dated: Carle Place, New York
       July 12, 2010

                              s/Richard S. Feinsilver

                              _____
                              Richard S. Feinsilver, Esq. (rf5531)
                              Attorney for Debtor/Plaintiff
                              One Old Country Road, Suite 125
                              Carle Place, New York 11514

# EXHIBIT A

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT Eastern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>FANI DOURAKIS | Case Number:<br>10-44826 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>AmTrust Bank, a division of New York Community Bank | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>AmTrust Bank, a division of New York Community Bank<br>Dept OH98-0811  1111 Chester Avenue<br>Cleveland, Ohio 44114<br><br>Telephone number:<br>(216) 588-5677 | Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | | |
|---|---|---|
| **1. Amount of Claim as of Date Case Filed:**  $_____77,294.90 | | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** |
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. | | |
| If all or part of your claim is entitled to priority, complete item 5. | | Specify the priority of the claim. |
| ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:**   Money Loaned 2nd Mtg<br>(See instruction #2 on reverse side.) | | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:** 6613<br><br>   3a. Debtor may have scheduled account as: _____<br>   (See instruction #3a on reverse side.) | | |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☑ Real Estate   ☐ Motor Vehicle   ☐ Other<br>**Describe:**   145-50 19TH AVENUE  WHITE STONE, NY 11357<br><br>**Value of Property:**$_____  **Annual Interest Rate**_____%<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>**If any:** $_____674.74___  **Basis for perfection:** Note/Mortgage_____<br><br>**Amount of Secured Claim:** $_____77,294.90  **Amount Unsecured:** $_____ | | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___). |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | | **Amount entitled to priority:**<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | | |
|---|---|---|
| **Date:**<br>06/03/2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/s/ Alan Glick  Bankruptcy Specialist   aglick@amtrust.com | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT B

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT    Eastern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>FANI DOURAKIS | Case Number:<br>10-44826 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**AmTrust Bank, a division of New York Community Bank**

Name and address where notices should be sent:

AmTrust Bank, a division of New York Community Bank
Dept OH98-0811  1111 Chester Avenue
Cleveland, Ohio 44114

Telephone number:
(216) 588-5677

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):



Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**    $            613,977.49

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:**    Money Loaned 1st Mtg
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 5201

   **3a. Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**  ☑ Real Estate    ☐ Motor Vehicle    ☐ Other
**Describe:**  145-50 19TH AVENUE  WHITE STONE, NY 11357

**Value of Property:** $ _____  **Annual Interest Rate** _____ %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $ _____ 0.00  **Basis for perfection:** Note/Mortgage

**Amount of Secured Claim:** $ ____ 613,977.49  **Amount Unsecured:** $ _____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>06/03/2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/s/ Alan Glick  Bankruptcy Specialist  aglick@amtrust.com | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# NOTE

January 11, 2008      GARDEN CITY      New York
*[Date]*              *[City]*          *[State]*

145-50 19TH AVENUE, WHITE STONE, NY 11357
*[Property Address]*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 612,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is AMTRUST BANK
. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on March, 2008. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 1, 2038 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at AMTRUST BANK, P.O BOX 790376, ST. LOUIS, MO 63179-0376

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 4,174.92

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

LOAN NUMBER: |............|        MIN: 1001625000|............|

New York Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3233 01/01
—THE COMPLIANCE SOURCE, INC.—       Page 1 of 3       12601NY 08/00
www.compliancesource.com       ©2000, The Compliance Source, Inc.



date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)           _____ (Seal)
FANI DOURAKIS                  -Borrower                                        -Borrower

_____ (Seal)           _____ (Seal)
                               -Borrower                                        -Borrower

*[Sign Original Only]*



LOAN NUMBER: [..............]

New York Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3233 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 3 of 3                     1260INY 08/00
www.compliancesource.com                                                        ©2000, The Compliance Source, Inc.



EXHIBIT C

**APPRAISAL OF**



**LOCATED AT:**

145-50 19th Avenue
Whitestone, NY  11357

**FOR:**

Fani Dourakis
145-50 19th Avenue
Whitestone, NY  11357

**BORROWER:**

NA

**AS OF:**

March 27, 2010

**BY:**

Richard J. Sheeler
Neglia Appraisals, Inc.

NEGLIA APPRAISALS, INC.

**loanProspector®**   Limited Appraisal Analysis - Summary Appraisal Report

Summary Appraisal

File No.: 03100163

**Quantitative Analysis Appraisal Report**

THIS SUMMARY APPRAISAL REPORT IS INTENDED FOR USE BY THE LENDER/CLIENT FOR A MORTGAGE FINANCE TRANSACTION ONLY.

| Address 145-50 19th Avenue | City Whitestone | State NY | Zip Code 11357 |
|---|---|---|---|

| Description Section 24, Block 4630, Lot 29 | SMSA 35644 | | County Queens |
|---|---|---|---|

| Assessor's Parcel No. Same as legal description. | Tax Year 09/10 | R.E.Taxes $ 6890 | Special Assessments $ NA |
|---|---|---|---|

| Borrower NA | Current Owner Dourakis, Fani | Occupant: [X] Owner | Tenant | Vacant |
|---|---|---|---|---|---|

| Neighborhood or Project Name Whitestone | Project Type [ ] PUD [ ] Condominium | HOA$ | NA /Mo. |
|---|---|---|---|

| Sales Price $ N/A | Date of Sale NA | Description/$ amount of loan charges/concessions to be paid by seller NA |
|---|---|---|

| Map Reference 20 MM-12 | | Census Tract 1039.00 |
|---|---|---|

<table>
<tr><td>Property rights appraised</td><td>[X] Fee Simple</td><td>[ ] Leasehold</td></tr>
</table>

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| | | | | | Site area 3,742 Sq. Ft. | | | Shape Rectangular |
|---|---|---|---|---|---|---|---|---|

NEIGHBORHOOD

| Location | [X] Urban | [ ] Suburban | [ ] Rural | Property values | [ ] Increasing | [X] Stable | [ ] Declining | Single family housing | | Condominium housing | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Built up | [X] Over 75% | [ ] 25-75% | [ ] Under 25% | Demand/supply | [ ] Shortage | [X] In balance | [ ] Over supply | PRICE $(000) | AGE (yrs) | PRICE $(000) | AGE (yrs) |
| Growth rate | [ ] Rapid | [X] Stable | [ ] Slow | Marketing time | [ ] Under 3 mos. | [X] 3-6 mos. | [X] Over 6 mos. | 350 Low New | | N/A Low | N/A |
| | | | | | | | | 1.25 M High | 95 | N/A High | N/A |

Neighborhood boundaries The East River to the north, with Willets Point Boulevard to the south, Francis Lewis Boulevard to the east, and 133rd Place to the west.

| Predominant | 700 | 75 | Predominant | | |
|---|---|---|---|---|---|
| | | | N/A | | N/A |

SITE

Dimensions 37.42' x 100'

Specific zoning classification and description R-3A, Single & Two Family Detached Residential District

| Zoning compliance | [X] Legal | [ ] Legal nonconforming (Grandfathered use); | [ ] Illegal, attach description | [ ] No zoning |
|---|---|---|---|---|

Highest and best use of subject property as improved (or as proposed per plans and specifications): [X] Present use  [ ] Other use, attach description.

Flood Map #360497-0112F, 09/05/2007

| Utilities Public Other | | Off-site improvements | Type | Public | Private |
|---|---|---|---|---|---|
| Electricity [X] | 220 Amps | Water [X] | Street Macadam | | [X] |
| Gas [X] | National Grid | Sanitary sewer [X] | Alley None | | |

Are there any apparent adverse site conditions (easements, encroachments, special assessments, slide areas, etc.)? [ ] Yes [X] No  If Yes, attach description.  [ ] Previous appraisal files

IMPROVEMENTS

| Source(s) used for physical characteristics of property: | [X] Interior and exterior inspection | [ ] Exterior inspection from street | |
|---|---|---|---|
| [ ] MLS | [X] Assessment and tax records | [ ] Prior inspection | [X] Property owner | [ ] Other (Describe): |

| No. of Stories 2 | Type (Det./Att.) Det/2 Fam | Exterior Walls Vinyl Siding | Roof Surface Asp. Sh./Tar Paper | Manufactured Housing [ ] Yes [X] No |
|---|---|---|---|---|

Does the property generally conform to the neighborhood in terms of style, condition, and construction materials? [X] Yes [ ] No  If No, attach description.

Are there any apparent physical deficiencies or conditions that would affect the soundness or structural integrity of the improvements or the livability of the property?
[X] Yes [ ] No  If Yes, attach description. See Addenda

Are there any apparent adverse environmental conditions (hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property?  [ ] Yes [X] No  If Yes, attach description.

I researched the subject market area for comparable listings and sales that are the most similar and proximate to the subject property.
My research revealed a total of   48   sales ranging in sales price from $   305,000   to $   1,560,000 .
My research revealed a total of   NA   listings ranging in list price from $   NA   to $ NA .
The analysis of the comparable sales below reflects market reaction to significant variations between the sales and the subject property.

SALES COMPARISON ANALYSIS

| FEATURE | SUBJECT | SALE 1 | | SALE 2 | | SALE 3 | |
|---|---|---|---|---|---|---|---|
| Address | 145-50 19th Avenue Whitestone | 146-30 15th Avenue | | 150-27 17th Avenue | | 149-33 17th Road | |
| Proximity to Subject | | 0.26 Mile NNE | | 0.52 Mile E | | 0.40 Mile E | |
| Sales Price | $ NA | | $ 600,000 | | $ 585,000 | | $ 645,000 |
| Price/Gross Liv. Area | $ NA | $ 394.74 ☐ | | $ 292.50 ☐ | | $ 393.29 ☐ | |
| Data & Verif. Sources | | Comps Inc./MLS | | Comps Inc./MLS | | Comps Inc./MLS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | None Known | | None Known | | None Known | |
| Concessions | | 3/01/2010 | | 2/11/2010 | -2,900 | 07/28/2009 | -25,800 |
| Date of Sale/Time | | Average | | Average | | Average | |
| Location | Average | Average | | 3,000 Sq. Ft. | 7,400 | 3,000 Sq. Ft. | 7,400 |
| Site | 3,742 Sq. Ft. | 6,162 Sq. Ft. | -24,200 | Average | | Average | |
| View | Average | Average | | Detached | | Detached | |
| Design (Style) | Detached | Detached | | 90+/- Years | | 80+/- Years | |
| Actual Age (Yrs.) | 80+/- Years | 75+/- Years | -35,000 | Average | -35,000 | Good | -60,000 |
| Condition | Average | Average | | | | | |
| Room Count | Total 10 Bdms 4 Baths 2.0 | Total 8 Bdms 4 Baths 2.0 | 21,400 | Total 9 Bdms 4 Baths 2.0 | -2,700 | Total 10 Bdms 6 Baths 2.0 | 15,400 |
| Gross Living Area | 1,947 Sq. Ft. | 1,520 Sq. Ft. | | 2,000 Sq. Ft. | | 1,640 Sq. Ft. | |
| Basement and Finished | Full, Finshed | Full, Finshed | | Full, Finished | 5,000 | Full, Finished | 5,000 |
| Rooms Below Grade | w/Bath | w/Bath | 2,500 | 1 Car Garage | | None | 2,500 |
| Garage/Carport | 1 Car Garage | 1 Car Garage | | | | | |
| Net Adj. (total) | | [ ] + [X] - $ 35,300 | | [ ] + [X] - $ 28,200 | | [ ] + [X] - $ 55,500 | |
| Adjusted Sales Price | | Gross 13.9% Net -5.8% $ 564,700 | | Gross 9.1% Net -4.8% $ 556,800 | | Gross 18.0% Net 8.6% $ 589,500 | |
| of Comparables | | | | | | | |
| Date of Prior Sales | 02/07/2008 | No Prior Sales | | No Prior Sales | | No Prior Sales | |
| Price of Prior Sales | $ 765,000 | $ Within 3 Years | | $ Within 3 Years | | $ Within 3 Years | |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of the prior sales of subject and comparables.

Summary of sales comparison and value conclusion: See addenda for comments on sales comparison.

This appraisal is made [X] "as-is", or [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, or
[ ] subject to the following repairs, alterations or conditions:
BASED ON AN [ ] EXTERIOR INSPECTION FROM THE STREET OR AN [X] INTERIOR AND EXTERIOR INSPECTION, I ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT TO BE $ 570,000 , AS OF 03/27/2010

NEGLIA APPRAISALS, INC.

Summary Appraisal
File No.: 03100163

| | SUBJECT | SALE 4 | | SALE 5 | | SALE 6 | |
|---|---|---|---|---|---|---|---|
| Address | | 149-25 17th Road | | | | | |
| | | Whitestone | | | | | |
| Proximity to Subject | | 0.40 Mile E | | | | | |
| Sale Price | $ | NA | $ 610,000 | $ | | $ | |
| | $ | NA | $ 371.95 | $ | Ø | $ | Ø |
| Data Sources | | Comps Inc./MLS | | | | | |
| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Financing | | | | | | | |
| Concessions | | None Known | | | | | |
| Date of Sale/Time | | 12/02/2009 | -9,200 | | | | |
| Location | Average | Average | | | | | |
| Site | 3,742 Sq. Ft. | 3,000 Sq. Ft. | 7,400 | | | | |
| View | Average | Average | | | | | |
| Design (Style) | Detached | Detached | | | | | |
| Actual Age (Yrs.) | 80+/- Years | 80+/- Years | | | | | |
| Condition | Average | Good | -60,000 | | | | |
| Above Grade | Total: Bdrms: Baths | Total: Bdrms: Baths | | Total: Bdrms: Baths | | Total: Bdrms: Baths | |
| Room Count | 10 : 4 : 2.0 | 8 : 5 : 2.0 | | | | | |
| Gross Living Area | 1,947 Sq. Ft. | 1,640 Sq. Ft. | 15,400 | Sq. Ft. | | Sq. Ft. | |
| Basement and Finished | Full, Finshed | Full, | | | | | |
| Rooms Below Grade | w/Bath | Unfinished | 7,500 | | | | |
| Garage/Carport | 1 Car Garage | None | 2,500 | | | | |
| | | | | | | | |
| Net Adj. (total) | | [ ] + [X] - $ | 36,400 | [ ] + [ ] - $ | | [ ] + [ ] - $ | |
| Adjusted Sales Price | | Gross: 15.7% | | Gross: | | Gross: | |
| of Comparables | | Net: -6.0% $ | 573,600 | Net: $ | | Net: $ | |
| Date of Prior Sales | 02/07/2008 | No Prior Sales | | | | | |
| Price of Prior Sales | $ 765,000 | $ Within 3 Years | | $ | | $ | |

ADDENDUM

| | | File No.: 03100163 |
| --- | --- | --- |
| A | | Case No.: Summary Appraisal |
| Address: 145-50 19th Avenue | State: NY | Zip: 11357 |
| hitestone | | |
| r: Fani Dourakis | | |

## COMMENTS ON DESCRIPTION OF IMPROVEMENTS:

According to the owner, the subject received a complete renovation just prior to their purchase in 2008. It appears that the quality of work was poor.

The subject suffers the following deferred maintenance:

- The banisters for the staircase leading to the attic are loose.

- There is evidence of roof leaks in the attic, second story family room, and in the staircase. Spotless Gutter Cleaning & Repair, Inc. estimates the cost to repair the roof at $25,000 as per a written estimate. In light of this, it is assumed that the roof is at the end of its economic life and needs to be replaced.

- The first floor bathroom window is cracked.

- There is evidence of leaks around a majority of the windows. It is probable that several windows need to be replaced.

- There is evidence of a leak in the ceiling of the first floor bathroom. According to the owner, there was a leak from the second floor bathroom that caused the damage. Said leak has reportedly been repaired and the owner is waiting a month to make sure there are no other issues before completing the cosmetic work necessary to repair the ceiling.

- The kitchen floors in both units appear not to be level.

- The paint is chipped and peeling above the ceiling fan located in the second floor unit.

- There is evidence of cracks to the exterior wall of the foundation. The basement is finished so the appraiser was unable to verify if the crack is affecting the foundation.

- The rear soffit appears to be rotted.

The cost to cure the subject's deferred maintenance is estimated to be between $30,000 and $40,000, say $35,000. This amount will be applied in the sales comparison approach to value.

## COMMENTS ON SALES COMPARISON:

Due to a lack of recent sales similar to the subject, it was necessary to use two sales more than six months old.

Negative time adjustments were applied at 6% per year.

Where appropriate, adjustments for differences in site size were made at $10 psf.

Condition adjustments include the estimated cost to cure the subject's deferred maintenance.

Based on our through exterior inspection, comparables #3 and #4 sold in good condition.

Where appropriate, adjustments for differences in GLA were made at $50 psf, and bath adjustments at $2,500 per half bath difference.

Although comparable #2 is an estate sale, it sold consistent with market levels and is assumed to be an arm's length transaction.

Comparable #4 was sold at a public reserve auction held by the owner. It also sold consistent with market levels and reflects current market conditons.

## FINAL RECONCILIATION:

After adjustments, the indicated range of value is between $556,800 and $589,500, with three of the four comparables having a range between $556,800 and $574,900. Therefore, the value estimate is:

### FIVE HUNDRED SEVENTY THOUSAND

### ($570,000)

## ADDENDUM

| | File No.: 03100163 |
|---|---|
| N/A | Case No.: Summary Appraisal |
| Address: 145-50 19th Avenue | State: NY    Zip: 11357 |
| Whitestone | |
| er: Fani Dourakis | |

## EXTRAORDINARY ASSUMPTIONS:

The estimated value stated herein is based on the following extraordinary assumptions:

- Although the floors are not level, it is assumed that the floor joists are intact, and there are no structural defects in the support beams.

- That there are no significant cracks or deterioration of the subject's foundation, and that there are no significant defects which undermine its structural integrity.

- If is is subsequently determined that there are significant structural defects, the cost of repairs must be deducted from the valuation.



**FLOORPLAN**

| | File No.: 03100163 |
|---|---|
| NA | |
| y Address: 145-50 19th Avenue | Case No.: Summary Appraisal |
| Whitestone | State: NY |  Zip: 11357 |
| der: Fani Dourakis | |

### 1st FLOOR

22'

Kitchen | Bedroom

Bath | Bedroom

CL

CL

CL

CL

Living Room

Family Room

48.5'

22'

### 2nd FLOOR

22'

Kitchen | CL

Bath | Bedroom

CL

CL

Living Room

Bedroom | Family Room

CL

CL

40'

22'

Sketch by Apex Medina™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GBA1 | First Floor | 1067.00 | 1067.00 |
| GBA2 | Second Floor | 880.00 | 880.00 |
| | | | |
| Net BUILDING Area | | (rounded) | 1947 |

| BUILDING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 22.00 x 48.50 | | 1067.00 |
| Second Floor | | |
| 22.00 x 40.00 | | 880.00 |
| | | |
| 2 Items | (rounded) | 1947 |



**LOCATION MAP**



dress: 145-50 19th Avenue    State: NY    Zip: 1135/
stone
Fani Dourakis



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: March 27, 2010
Appraised Value: $ 570,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

File No.:   03100163
Case No.: Summary Appraisal
dress: 145-50 19th Avenue                                           State: NY                    Zip: 11357
stone
rani Dourakis

LIVING ROOM



KITCHEN



BATH





ess: 145-50 19th Avenue
ne
Dourakis

State: NY                    Zip: 11357

LIVING ROOM

KITCHEN

BATH

Case No.: Summary Appraisal

Address: 145-50 19th Avenue                State: NY          Zip: 11357

Firestone

Fani Dourakis



DEFERRED MAINTENANCE:
EVIDENCE OF LEAK IN ATTIC



DEFERRED MAINTENANCE:
EVIDENCE OF LEAK IN STAIRCASE



DEFERRED MAINTENANCE:
CRACKED BATHROOM WINDOW

File No.:  03100163
Case No.: Summary Appraisal
ress: 145-50 19th Avenue                    State: NY                    Zip: 11357
astone
rani Dourakis



DEFERRED MAINTENANCE:
FIRST FLOOR BATHROOM CEILING



DEFERRED MAINTENANCE:
FIRST FLOOR KITCHEN FLOOR



DEFERRED MAINTENANCE:
SECOND FLOOR KITCHEN FLOOR

State: NY                 Zip: 11357



**DEFERRED MAINTENANCE:**
PAINT PEELING ABOVE CEILING FAN



**DEFERRED MAINTENANCE:**
REAR SOFFIT



**DEFERRED MAINTENANCE:**
WINDOW LEAK

COMPARABLE PROPERTY PHOTO ADDENDUM

| | File No.: 03100163 |
|---|---|
| ress: 145-50 19th Avenue | Case No.: Summary Appraisal |
| estone | State: NY | Zip: 11357 |
| Fani Dourakis | |



**COMPARABLE SALE #1**

146-30 15th Avenue

Sale Date: 3/01/2010
Sale Price: $ 600,000



**COMPARABLE SALE #2**

150-27 17th Avenue

Sale Date: 2/11/2010
Sale Price: $ 585,000



**COMPARABLE SALE #3**

149-33 17th Road

Sale Date: 07/28/2009
Sale Price: $ 645,000

| | File No.: 03100185 |
|---|---|
| Address: 145-50 19th Avenue | Case No.: Summary Appraisal |
| Whitestone | State: NY | Zip: 11357 |
| Fani Dourakis | |



**COMPARABLE SALE #4**

149-25 17th Road
Whitestone
Sale Date: 12/02/2009
Sale Price: $ 610,000



**COMPARABLE SALE #5**

Sale Date:
Sale Price: $



**COMPARABLE SALE #6**

Sale Date:
Sale Price: $

NEGLIA APPRAISALS, INC.

Summary Appraisal

File No.: 03100163

**...oanProspector**

### Information for PUDs (if applicable)--Is the developer/builder in control of the Home Owners' Association (HOA)?    ☐ Yes   ☐ No

...e the following information for PUDs only if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit:

| ...number of phases | Total number of units | Total number of units sold |
| ...al number of units rented | Total number of units for sale | Data Source(s) |

Was the project created by the conversion of existing buildings into a PUD?    ☐ Yes   ☐ No   If yes, state date of conversion: _____

Does the project contain any multi-dwelling units?    ☐ Yes   ☐ No  Data Source: _____

Are the common elements completed?    ☐ Yes   ☐ No  If No, describe status of completion: _____

Are any common elements leased to or by the Home Owners' Association?    ☐ Yes   ☐ No  If yes, attach addendum describing rental terms and options.

Describe common elements and recreational facilities:

---

**Project Information for Condominiums (if applicable)--Is the developer/builder in control of the Home Owners' Association (HOA)?**    ☐ Yes   ☐ No

Provide the following information for all Condominium Projects:

| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data Source(s) |

Was the project created by the conversion of existing buildings into a condominium?    ☐ Yes   ☐ No   If yes, date of conversion: _____

Project Type:   ☐ Primary Residence  ☐ Second Home or Recreational   ☐ Row or Townhouse   ☐ Garden  ☐ Midrise  ☐ Highrise ☐ _____

Condition of the project, quality of construction, unit mix, etc.:

Are the common elements completed?    ☐ Yes   ☐ No  If No, describe status of completion:

Are any common elements leased to or by the Home Owners' Association?    ☐ Yes   ☐ No  If yes, attach addendum describing rental terms and options.

Describe common elements and recreational facilities:

---

**PURPOSE OF APPRAISAL:** The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report based on a quantitative sales comparison analysis for use in the mortgage finance transaction.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

---

### STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided any required sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

4. The appraiser has noted in the appraisal report any adverse conditions (such as, but not limited to, needed repairs, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, expressed or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

6. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

7. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the report to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

8. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

Freddie Mac Form 2055          Produced using ACI software, 800.234.8727 www.aciweb.com          11/9

anProspector®

File No.: 03100163

**SER'S CERTIFICATION:** The Appraiser certifies and agrees that:

erformed this appraisal by (1) personally inspecting from the street the subject property and neighborhood and each of the arable sales (unless I have otherwise indicated in this report that I also inspected the interior of the subject property); (2) collecting, rming, and analyzing data from reliable public and/or private sources; and (3) reporting the results of my inspection and analysis this summary appraisal report. I further certify that I have adequate information about the physical characteristics of the subject property and the comparable sales to develop this appraisal.

2. I have researched and analyzed the comparable sales and offerings/listings in this report that are the best available for the subject property. I further certify that adequate comparable market data exists in the general market area to develop a reliable sales comparison analysis for the subject property.

3. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware, have considered these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them, and have commented about the effect of the adverse conditions on the marketability of the subject property. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

4. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

5. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

6. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

7. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

8. I estimated the market value of the real property that is the subject of this report based on the sales comparison approach to value. I further certify that I considered the cost and income approaches to value, but, through mutual agreement with the client, did not develop them, unless I have noted otherwise in this report.

9. I performed this appraisal as a limited appraisal, subject to the Departure Provision of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in the place as of the effective date of the appraisal (unless I have otherwise indicated in this report that the appraisal is a complete appraisal, in which case, the Departure Provision does not apply).

10. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value. The exposure time associated with the estimate of market value for the subject property is consistent with the marketing time noted in the Neighborhood section of this report. The marketing period concluded for the subject property at the estimated market value is also consistent with the marketing time noted in the Neighborhood section.

11. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. I further certify that no one provided significant professional assistance to me in the development of this appraisal.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certified and agrees that; I directly supervise the appraiser who prepared the appraisal report, have examined the appraisal report for compliance with the Uniform Standards of Professional Appraisal Practice, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 5 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature: Richard J. Sheeler | Signature: |
| Name: Richard J. Sheeler | Name: Domenick Neglia, SRA, CSA-G |
| Company Name: Neglia Appraisals, Inc. | Company Name: Neglia Appraisals, Inc. |
| Company Address: 7711  13th Avenue | Company Address: 7711  13th Avenue |
| Brooklyn, New York  11228 | Brooklyn, New York  11228 |
| Date of Report/Signature: 04/06/2010 | Date of Report/Signature: 4/6/2010 |
| State Certification #: | State Certification #: 46-10941 |
| or State License #: | or State License #: |
| State: NY | State: NY |
| Expiration Date of Certification or License: | Expiration Date of Certification or License: 07/20/2010 |

**ADDRESS OF PROPERTY APPRAISED:**
145-50 19th Avenue
Whitestone, NY  11357

APPRAISED VALUE OF THE SUBJECT PROPERTY $ 570000
EFFECTIVE DATE OF APPRAISAL/INSPECTION 03/27/2010

**LENDER/CLIENT:**
Name:
Company Name: Fani Dourakis
Company Address: 145-50 19th Avenue, Whitestone, NY 11357

**SUPERVISORY APPRAISER:**
SUBJECT PROPERTY
[X] Did not inspect subject property
[ ] Did inspect exterior of subject property from street
[ ] Did inspect interior and exterior of subject property
COMPARABLE SALES
[X] Did not inspect exterior of comparable sales from street
[ ] Did inspect exterior of comparable sales from street

Freddie Mac Form 2055

Produced using ACI software, 800.234.8727 www.aciweb.com
NEGLIA APPRAISALS, INC.

11/97

**ADDENDUM**

| | |
|---|---|
| NA | File No.: 03100163 |
| Property Address: 145-50 19th Avenue | Case No.: Summary Appraisal |
| Whitestone | State: NY    Zip: 11357 |
| Lender: Fani Dourakis | |

If mold is present in the subject property, the appraiser is not qualified to determine the cause of the mold, the type of mold or whether the mold might pose any risk to the property or its inhabitants. Additional inspection by a qualified professional is recommended.

### ADDITIONAL LIMITING CONDITIONS:

Neither all nor any part of the contents of this report shall be conveyed to any person or entity, other than the appraisal client, through advertising, solicitation materials, public relations, news, sales, or other media without the written consent and approval of the authors, particularly as to valuation conclusions, the identity of the appraisal or firm with which the appraiser is connected, or any reference to the Appraisal Institute or the Columbia Society of Real Estate Appraisers. Further, the appraiser or firm assumes no obligation, liability, or accountability to any third party. If this report is placed in the hands of anyone but the client, client shall make such party aware of all the assumptions and limiting conditions of this assignment.

### APPRAISAL INSTITUTE CERTIFICATION:

The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute.

The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

As of the date of this report, Domenick Neglia has completed the continuing education program of the Appraisal Institute.

# ADDENDUM

| | File No.: 03100163 |
| --- | --- |
| | Case No.: Summary Appraisal |
| 145-50 19th Avenue | |
| | State: NY    Zip: 11357 |
| Dourakis | |

## SCOPE OF THE APPRAISAL:

The scope of the appraisal requires compliance with the Uniform Standards of Professional Appraisal Practice promulgated by the Appraisal Standards Board of the Appraisal Foundation and the Guide Notes to the Standards of Professional Appraisal Practice adopted by the Appraisal Institute. The standards contain requirements and specific guidelines that deal with the procedures to be followed in developing an appraisal analysis, or opinion. These uniform standards require that the appraiser's analysis, opinions, and conclusions be communicated in a manner that will be meaningful and not misleading in the marketplace.

This is a Summary Appraisal Report which is intended to comply with the reporting requirements set forth under Standard Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice for a Summary Appraisal Report. As such, it might not include full discussions of the data, reasoning, and analysis that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analysis is retained in the appraiser's file. The information contained in this report is specific to the needs of the client and for the intended use stated in this report. The appraiser is not responsible for unauthorized use of this report.

As part of the research for this appraisal it was necessary to investigate comparable sales in the market area of the subject; the details concerning comparable sales were obtained from public records, through the "Comps Inc." services, or other services if noted in the report. In addition (if applicable), investigation of comparable sales and rentals was conducted by interviewing local brokers and property owners. The research of comparable sales and rentals was diligent and thorough to the best of our knowledge, and information was confirmed by principals or brokers whenever possible. While all the principals were not available, it is believed that the process of collecting, confirming, and reporting the data was carried out in a scientific and objective manner.

Due to the appraiser's lack of knowledge and experience with respect to the detection and measurement of hazardous substances, this assignment does not cover the presence or absence of such substances. However, any obviously known hazardous substances affecting the property will be reported.

The purpose of this appraisal is to estimate the market value of the subject property. According to the client, the intended use of this appraisal is for bankruptcy proceedings.

In developing the cost approach to value (if appropriate), data was compiled from the appraiser's knowledge of typical building costs in the area, conversations with local contractors, and various cost estimating manuals, i.e. Marshall & Swift Valuation Service. Most purchasers of properties similar to the subject, whether for investment or owner occupancy, do not rely on the cost approach when making purchase decisions. Therefore, the Cost Approach has also been excluded from this analysis.

Properties similar to the subject are typically purchased for owner occupancy. Therefore, the income approach was not developed.

## FIRREA COMPLIANCE:

This appraisal was performed in accordance with the regulations as mandated by Title XI of The Financial Institute Reform, Recovery, and Enforcement Act of 1989 (FIRREA). In addition, this appraisal conforms to the Uniform Standards of Professional Appraisal Practice (USPAP) as adopted by the Appraisal Standards Board of the Appraisal Foundation and conforms to the by-laws, regulations, and Code of Professional Ethics and Standards of the Appraisal Institute.

## ENVIRONMENTAL DISCLAIMER:

Unless otherwise stated in this report, the existence of hazardous materials, which may or may not be present on the property, was not observed by the appraiser. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation, and other potentially hazardous materials may affect the value of the property. The value estimated is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for such conditions or for any expertise or engineering knowledge required to discover them. The client is urged to retain an expert in this field, if desired.

The appraiser is not a home environmental inspector. The appraiser provides an opinion of value. The appraisal does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. A professional home inspection or environmental inspection is recommended.